[Civ. No. 41851. First Dist., Div. Four. July 26, 1978.]

NEAT SAWYER, Plaintiff and Respondent, v.
BANK OF AMERICA, Defendant and Appellant.

**COUNSEL**

Theodore Sachsman, Robert A. Padway and Joseph M. Thornhill for Defendant and Appellant.

Dahl, Hefner, Stark & Marois, John D. Bessey and Howard J. Stagg for Plaintiff and Respondent.

**OPINION**

**CHRISTIAN, J.**—Bank of America appeals from a judgment rendered on a jury verdict awarding to respondent damages and attorney's fees, to compensate respondent for fire damage to his pickup on which insurance coverage had allegedly lapsed because of actionable misconduct on the part of the defendant.

The judgment on the verdict awarded damages as follows:

| | |
|---|---|
| Actual damages: | $ 2,005.90 |
| General damages: | 5,000.00 |
| Punitive damages: | 15,000.00 |

It had been stipulated that a demand by respondent for attorney's fees would be determined separately by the court. The court rendered a second judgment, awarding attorney's fees in the amount of $6,356 to respondent.

Respondent, a farmer, had been a long time customer of appellant bank. Several times over the years he purchased vehicles from Du Pratt Ford in Dixon, financing his purchases through appellant's local branch. A security agreement would be prepared by the dealer on a form supplied by appellant. The form contained a provision that "Upon any failure of Buyer to provide insurance, Seller may obtain the same and in such event Buyer will pay to Seller the premium therefor on demand. At option of Seller, such premium together with finance charge shall, without demand, be added to the balance due under the agreement . . . ." At the completion of the transaction the security agreement would be assigned by the dealer to appellant. Respondent's practice was not to obtain insurance on his vehicles; instead, he relied on the bank to obtain insurance for him and this was done with respect to at least four vehicles prior to the incident here in litigation.

During 1974, appellant had two vehicles, a 1973 Ford pickup and a 1973 Ford Thunderbird, which had balances outstanding under the arrangements described above; both vehicles were covered by insurance which had been obtained by the bank. On August 21, 1974, the pickup was damaged by fire, resulting in repair costs in the sum of $2,005.90. It was then discovered that, as a result of a clerical error, the bank had incorrectly recorded the expiration date of the insurance policy which had covered the pickup. The bank had thus failed to notice that the policy was expiring. Respondent ignored a premium notice which the insurer sent him. Because of these lapses, the loss was not covered by insurance; respondent demanded reimbursement from the bank.

Bank employees discovered what had happened but declined to pay respondent's loss. Respondent continued to demand payment; 10 months after the loss the bank offered to pay $1,000 in compromise of the $2,005.90 claim. Respondent rejected the offer.

There was evidence that the financial strain imposed upon respondent by being compelled to pay for the repairs to his truck caused him to be nervous and upset and to lose sleep.

Appellant properly recognizes that the verdict of the jury is supported by substantial evidence insofar as it awarded to respondent $2,005.90 (the cost of repairing the pickup) for breach of a contractual obligation assertedly assumed by the bank, separate from the security agreement, to obtain and maintain insurance on respondent's vehicle. Accordingly, that award is not challenged in the appeal.

■ The $5,000 award of general damages has no other possible support in the evidence except on the basis that it was to compensate respondent for insomnia and emotional distress. Such damages are not to be awarded on a cause of action for breach of contract. (*Mack* v. *Hugh W. Comstock Associates* (1964) 225 Cal.App.2d 583, 588 [37 Cal.Rptr. 446].) Respondent seeks to defend the award on the basis of the tort cause of action which he pleaded: violation by the bank of an implied covenant of good faith and fair dealing in refusing to pay respondent the costs of repairing his truck. But it is not a tort for a contractual obligor to dispute his liability under the contract. Rather, the tort of breaching an implied covenant of good faith and fair dealing consists in bad faith action, extraneous to the contract, with the motive intentionally to frustrate the obligee's enjoyment of contract rights. (See, e.g., *Brewer* v. *Simpson* (1960) 53 Cal.2d 567, 589 [2 Cal.Rptr. 609, 349 P.2d 289]; *Berkeley Lawn Bowling Club* v. *City of Berkeley* (1974) 42 Cal.App.3d 280, 286 [116 Cal.Rptr. 762].) Viewed most favorably from the point of view of respondent, the present record goes no further than to show that the bank breached an oral agreement to obtain and maintain insurance on respondent's vehicles and that when the breach was complained of by respondent, the bank refused to admit its responsibility and, after repeated demands by respondent, offered to pay, in compromise, only about one half the amount of the demand. We have found no authority recognizing tort liability resting solely on the basis of an obligor's resistance to an assertion of contract liability. It must be concluded that the general damages award in the amount of $5,000 has no support in the evidence and that the court should have granted appellant's motion for judgment notwithstanding the verdict on the tort cause of action.

■ Appellant points out that the award of punitive damages was also improper where there was no evidence which could support a finding of liability against appellant on a tort theory. Here, the only supportable theory of liability was for breach of contract. Hence, the award of punitive damages cannot be sustained. (Civ. Code, § 3294.)

Finally, appellant challenges the award of attorney's fees in the amount of $6,356. A substantial question has been raised by respondent as to whether the challenge to the award of attorney's fees can be reached in the present appeal. Apparently through inadvertence counsel for appellant included in a notice partially abandoning the appeal, a statement that the appeal was being abandoned as to the award of attorney's fees. When the error was discovered, an amended notice of abandonment was filed superseding the former notice and indicating that the appeal was

abandoned instead as to the award of costs. ■ The jurisdiction of this court is fixed in the first instance by the notice of appeal and may be restricted by partial abandonment of the appeal. (6 Witkin, Cal. Procedure (2d ed.) Appeal, § 21, p. 4038.) ■ But the erroneous notice of partial abandonment was promptly corrected. The amended notice was not filed until after the time for filing a notice of appeal had expired. Therefore it could not be given effect as a new notice of appeal. But in the absence of reliance by other parties, the surrender of rights is a question of intent. Here there is no showing of reliance by respondent upon the erroneous partial abandonment. At the same time there is an uncontradicted showing that the first notice of partial abandonment did not accurately express the bank's intention.

■ Reference to the complaint establishes that respondent sued not on the written security agreement, which contained a provision for attorney's fees, but on a separate agreement arising either from oral communications between the parties or from their course of dealings. There is no allegation or proof that the separate agreement included a provision for attorney's fees. Therefore, the case is governed not by Civil Code section 1717 (which allows a reciprocal award of fees where a contract provides for an award to one of the parties) but by the basic rule in this jurisdiction that attorney's fees are generally not shifted to the prevailing party. (See *Arnold* v. *Browne* (1972) 27 Cal.App.3d 386, 398 [103 Cal.Rptr. 775].)

The judgments and the order denying the motion for judgment notwithstanding the verdict are reversed with directions to render judgment awarding to respondent only actual damages in the amount of $2,005.90.

Caldecott, P. J., concurred.

**RATTIGAN, J.**—I concur in reversal of the judgment awarding respondent his attorneys' fees, because he did not sue appellant bank for breach of the written security agreement which provided for them. As to reversal of the judgment for actual and punitive damages entered on the jury's verdict, I respectfully dissent.

Respondent did sue the bank for its breach of its oral contract to keep the pickup insured. His complaint alleged the oral contract, its breach by the bank, and that the breach had caused him actual damage in the

amount of $2,005.90 (which, according to his proof, was the sum he was required to spend in having the uninsured pickup repaired). He proved the oral contract, which was made when an employee of the bank, at its branch office, promised him that the bank would renew the vehicle insurance if he did not. He testified to the employee's promise, she corroborated him, and there was evidence that the promise was kept through more than one renewal of the insurance. The jury obviously found, from this substantial evidence, that the oral contract was made. Its breach, and respondent's consequent damage in the amount of $2,005.90, are not disputed.

The bank's implied covenant of good faith and fair dealing *separately* obligated it, by operation of law, as an incident of the oral contract pleaded and proved. (*Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 771 [128 P.2d 665]; *Berkeley Lawn Bowling Club* v. *City of Berkeley* (1974) 42 Cal.App.3d 280, 286 [116 Cal.Rptr. 762].) Respondent *separately* sued the bank for breach of this covenant, alleging $5,000 in *separate* damages by reason of his having become "sick" and "emotionally distressed" in consequence of the breach. Although such damages are not recoverable for breach of a contract as such (*Mack* v. *Hugh W. Comstock Associates* (1964) 225 Cal.App.2d 583, 588 [37 Cal.Rptr. 446]), they were recoverable here, in tort, for the bank's *separate* breach of its implied covenant of good faith and fair dealing. (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 432-434 [58 Cal.Rptr. 13, 426 P.2d 173].) Respondent was entitled to elect between suing for these damages in contract or in tort. (*Id.,* at p. 432.) He was accordingly entitled to recover them if he proved the breach of the implied covenant and the requisite causation.

The bank's regional officers denied respondent's claim for $2,005.90 on the strength of the written security agreement, which on its face obligated him to renew the vehicle insurance. They did this after an unexplained delay of several months, and without any knowledge of the facts of the oral contract or of its previous performance by the bank. There was evidence supporting the inference that these facts were intentionally concealed by one or more of the bank's employees at the branch office. The bank's in-house attorney testified that she recommended a settlement offer only after she learned of the oral contract from respondent himself.

The conduct of the branch-office employees, which must be imputed to the bank, amounted to more than the mere "resistance to an assertion of contract liability" mentioned in the majority opinion. It was not

good-faith "resistance to an assertion" of the bank's liability under the oral contract, but a bad-faith effort to conceal that liability from the responsible management of the bank by concealing the fact of the contract itself. The concealment frustrated respondent's realization of the benefits of the contract. This is precisely the result which the bank's implied covenant of good faith and fair dealing obligated it to avoid. (*Universal Sales Corp.* v. *Cal. etc. Mfg. Co., supra,* 20 Cal.2d 751 at p. 771; *Berkeley Lawn Bowling Club* v. *City of Berkeley, supra,* 42 Cal.App.3d 280 at p. 286.)

As the majority opinion points out, there was also evidence that respondent became nervous and upset and lost sleep. The source of that evidence attributed his condition to the bank's failure to honor his claim for $2,005.90, which in turn resulted from the concealment mentioned above.

The sum of this evidence supports the verdict holding the bank liable in tort—not for its "resistance to an assertion" of liability in contract—for the $5,000 respondent pleaded and proved as actual damages for breach of the implied covenant of good faith and fair dealing. The additional award of punitive damages is supported by the same evidence. Punitive damages are recoverable because respondent was entitled to sue for breach of the covenant in contract or in tort. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 865, p. 3153.)

The bank does not contend on appeal that either amount awarded is excessive, and the trial court denied its motion for a new trial made on that ground. I do not perceive the instruction error it claims. I would affirm the judgment on the basis that the verdict is supported by respondent's pleading and by substantial evidence.

A petition for a rehearing was denied August 24, 1978, and the opinion was modified to read as printed above. Rattigan, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied September 20, 1978. Bird, C. J., was of the opinion that the petition should be granted.