[No. D009314. Fourth Dist., Div. One. Mar. 26, 1990.]

KOSTAS CHELIOS et al., Plaintiffs and Appellants, v. PETER KAYE et al., Defendants and Respondents.

**COUNSEL**

Brown, Martin, Haller & McClain and Robert L. Purvin, Jr., for Plaintiffs and Appellants.

Robert L. Rentto for Defendants and Respondents.

**OPINION**

**FROEHLICH, J.**—Kostas and Susan Chelios appeal from an order denying their motion, made pursuant to Code of Civil Procedure[1] section 685.080, for an award of costs (consisting principally of postjudgment attorney's fees) incurred in enforcing a judgment.

### 1. *Factual and Procedural Background*

On January 9, 1985, a judgment on the Chelioses' complaint was entered against numerous defendants, including respondents Peter and Mary Kaye, for breach of contract and constructive fraud. The Chelioses were awarded $75,541 as damages, $3,618.88 as interest, plus $32,500 as prejudgment attorney's fees and $1,510.08 as costs of suit.

On June 14, 1985, an abstract of judgment was recorded against the real property of the judgment debtors. The judgment debtors thereafter formed D.W.G.K. Restaurants, Inc. (the corporation), doing business as Jimmy's Family Restaurants. On December 12, 1985, the corporation filed chapter 11 bankruptcy. On April 28, 1986, certain real property owned by the corporation was sold free and clear of liens pursuant to an order of the bankruptcy court. The Chelioses' judgment lien attached to those proceeds.

On September 15, 1988, the bankruptcy court distributed $95,586.27 plus interest to the Chelioses. The Chelioses moved, pursuant to 11 United

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

States Code sections 503(b)(3)(D) and 506(b), for an award of those post-judgment attorney's fees incurred during their efforts to enforce the judgment. On March 25, 1988, the bankruptcy court, in a published memorandum decision (see *In re D. W.G.K. Restaurants, Inc.* (Bankr.S.D.Cal. 1988) 84 Bankr. 684), denied appellants' request.[2]

The Chelioses thereafter realized that the Kayes were not protected by the automatic stay of the bankruptcy court. Accordingly, on September 9, 1988, the Chelioses moved, in the San Diego County Superior Court, for an order awarding postjudgment costs of enforcement of $96,240, consisting primarily of attorney's fees in the amount of $91,459. ▮▮ ▆▆ The attorney's fees sought by the Chelioses were incurred in their postjudgment efforts to collect upon the judgment, both in the state court and bankruptcy court proceedings.[3]

▮▮ In support of their motion the Chelioses argued that section 685.040 entitled them to collect the reasonable and necessary costs of enforcing their judgment, which they contended included attorney's fees. The Chelioses sought to avoid section 685.040's express prohibition against including attorney's fees as costs of enforcement by arguing that the underlying contract, upon which their judgment was based, contained a unilateral attorney's fees clause, and Civil Code section 1717 (by which such attorney's fees clause is rendered reciprocal) was the provision which "otherwise provided by law" a right to collect attorney's fees as costs incurred in the collection efforts.

---

[2] The vast majority of Chelioses' attorney's fees were incurred in prosecuting their rights in bankruptcy court proceedings. While the res judicata impact of the bankruptcy court judgment might well have been raised to preclude recovery of those fees, the Kayes have neither raised nor argued that issue and have therefore waived such argument. (*Wolfsen* v. *Hathaway* (1948) 32 Cal.2d 632, 638 [198 P.2d 1], overruled on other grounds in *Flores* v. *Arroyo* (1961) 56 Cal.2d 492 [15 Cal.Rptr. 87, 364 P.2d 263].) Accordingly, we have no occasion to examine whether, and to what extent, the bankruptcy court judgment might be accorded res judicata effect.

[3] A portion of the attorney's fees was apparently incurred in resisting a state court appeal from the underlying judgment. Although the record is silent, the Chelioses indicate the appeal was voluntarily dismissed at some point prior to bankruptcy. While attorney's fees on appeal may be recoverable when the underlying obligation being litigated contains an attorney's fees clause (see, e.g., *Mabee* v. *Nurseryland Garden Centers, Inc.* (1979) 88 Cal.App.3d 420, 428-430 [152 Cal.Rptr. 31]), the failure to seek those fees within 30 days of the filing of the remittitur (Cal. Rules of Court, rule 26) waives the right to seek such supplemental fees. (*Moulin Electric Corp.* v. *Roach* (1981) 120 Cal.App.3d 1067, 1069-1070 [175 Cal.Rptr. 111].) Since the voluntary dismissal of an appeal confers upon respondent the status of prevailing party and obligates him timely to seek whatever costs he wishes to claim (Cal. Rules of Court, rules 19(a), 26(a); *Wilson* v. *Harley Davidson Motor Co.* (1977) 67 Cal.App.3d 678, 680-681 [136 Cal.Rptr. 793]), the Chelioses' failure timely to seek the attorney's fees connected with defending the appeal waives any further right as to those fees. (*Moulin Electric Corp.* v. *Roach, supra,* 120 Cal.App.3d at p. 1070.)

The trial court, reasoning that Civil Code section 1717 was inapplicable to the Chelioses' postjudgment attorney's fees because the contract rights had become merged into the judgment, denied the motion. This appeal followed.

2. *The Trial Court Correctly Ruled That Postjudgment Attorney's Fees Are Not Recoverable in This Case*

The Chelioses sought their postjudgment attorney's fees as costs of enforcement in reliance on section 685.040, which provides: "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title [Enforcement of Judgments] unless otherwise provided by law."

The Chelioses contend they fall within the "otherwise provided by law" exception described by section 685.040. They argue they are entitled to attorney's fees by virtue of Civil Code section 1717,[4] because the judgment they sought to enforce was premised on an underlying contract which included a unilateral attorney's fees clause. Because Civil Code section 1717 statutorily entitled them to collect the *prejudgment* attorney's fees incurred to enforce the contract, they argue their right to attorney's fees incurred in their *postjudgment* enforcement efforts is equally protected by Civil Code section 1717, and hence such fees are collectible costs within the "otherwise provided by law" exception of section 685.040.

However, Civil Code section 1717 has no operation in this case, because the Chelioses' fees were not incurred to enforce the provisions of the contract (as required by Civil Code section 1717), but were instead expended to enforce the *judgment.* ■ Civil Code section 1717 does not *create* a right to attorney's fees. Instead, its sole purpose is to transform a contractually unilateral right to fees into a reciprocal right to fees (*Associated Convalescent Enterprises* v. *Carl Marks & Co., Inc.* (1973) 33 Cal.App.3d 116, 120 [108 Cal.Rptr. 782]), and its applicability is predicated on the existence of a contractual right to attorney's fees. (*Sawyer* v. *Bank of America* (1978) 83 Cal.App.3d 135, 140 [145 Cal.Rptr. 623]; *Olson* v. *Arnett* (1980) 113 Cal.App.3d 59, 67-68 [169 Cal.Rptr. 629].)

---

[4] Civil Code section 1717 (a) provides in pertinent part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. . . . [¶] Reasonable attorney's fees shall be fixed by the court, and shall be an element of costs of suit."

■ In this case there was no extant contractual attorney's fees clause to trigger the application of Civil Code section 1717. When, as here, a lawsuit on a contractual claim has been reduced to a final, nonappealable judgment, all of the prior contractual rights are merged into and extinguished by the monetary judgment, and thereafter the prevailing party has *only* those rights as are set forth in the judgment itself. (*Coughlin* v. *Blair* (1953) 41 Cal.2d 587, 598 [262 P.2d 305]; Rest.2d Judgments (1982) § 18, com. a, at p. 152.) ■ The contract, having merged into the judgment, has no remaining vitality: "Merger is the substitution of rights and duties under the judgment or the decree for those under the agreement or cause of action sued upon. [Citations.]" (*Flynn* v. *Flynn* (1954) 42 Cal.2d 55, 58 [265 P.2d 865].) ■ In short, the judgment extinguished all further contractual rights of the Chelioses, including the contractual attorney's fees clause. (Cf. *Le Breton* v. *Stanley Contracting Co.* (1911) 15 Cal.App. 429, 434-435 [114 P. 1028] [contractually specified interest rate terminated on date judgment entered, and interest on judgment thereafter governed solely by statutory interest rate applicable to judgments]; Civ. Code, § 3289(a).)

Our decision is in harmony with the apparently uniform rule in other jurisdictions. In *Production Credit Ass'n.* v. *Laufenberg* (1988) 143 Wis.2d 200 [420 N.W.2d 778], for example, the court held a creditor was precluded from collecting postjudgment attorney's fees because the loan agreement, which contained the attorney's fees clause, was merged into the judgment and lost any further vitality or operation. Accordingly, after entry of judgment the creditor no longer had an extant contractual right to attorney's fees. Similarly, in *Caine & Weiner* v. *Barker* (1986) 42 Wash.App. 835 [713 P.2d 1133], the court held that the holder of a judgment which was entered on a promissory note containing an attorney's fees clause, had no right to recover attorney's fees incurred in collecting the judgment because of the doctrine of merger.

Because the Chelioses' fees were incurred to enforce a judgment bereft of an attorney's fees clause, and the underlying contract had been extinguished by merger *before* the herein disputed attorney's fees were incurred, there is no attorney's fees clause upon which to premise the statutory rights of Civil Code section 1717.[5] Because statutory authorization for attorney's fees in

---

[5] We recognize there are some limited and unique cases where contractual provisions for attorney's fees might survive to permit collection of postjudgment attorney's fees. For example, when a party seeks judicial foreclosure of a mortgage and a deficiency judgment, the decree of foreclosure does not merge the note into the decree because the statutory scheme contemplates a bifurcated proceeding in which the decree of foreclosure will be followed by trial on the issue of the deficiency. (Code Civ. Proc., § 726(b).) In such a proceeding attorney's fees incurred after foreclosure are properly recoverable (Code Civ. Proc., § 730), because the proceedings to enforce the secured note are not completed until the deficiency judgment is entered. Another unique case in which preexisting contractual rights are not necessarily

enforcing the judgment is thus lacking, the absolute bar of section 685.040 precludes the Chelioses from collecting their postjudgment attorney's fees.

The order is affirmed.

Wiener, Acting P. J., and Benke, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 7, 1990.

---

merged into the judgment involves separation agreements which are referenced in divorce decrees. In that context, whether there is a merger such that the contract rights are entirely supplanted by the judgment (*Hough* v. *Hough* (1945) 26 Cal.2d 605, 609-610 [160 P.2d 15]), or instead survive the judgment, depends on what the parties intended the effect of the divorce decree to have with respect to the separation agreement. (See *Flynn* v. *Flynn, supra*, 42 Cal.2d at pp. 57-59.)

We are not presented with, nor do we decide, the issue of whether a distinct contractual agreement, severable from the contract rights sued upon and merged into the judgment, could validly provide the right to recover postjudgment attorney's fees incurred in enforcing the judgment. Instead, our opinion is limited to the narrow question of whether contractual rights survive a monetary judgment entered upon such contract.